## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

HIE OF EFFINGHAM, LLC

       Debtor(s).

ROBERT T. BRUEGGE, Trustee of the
Estate of HIE of Effingham, LLC

       Plaintiff(s),

    v.

WBCMT 2007-C33 MID AMERICA
LODGING, LLC

       Defendant(s).

In Proceedings
Under Chapter 7

Case No. 10-60534

Adv. No. 12-6024

## OPINION

This matter is before the Court on the Trustee's Motion to Modify the Stipulation and Agreed Order resolving WBCMT 2007-C33 Mid America Lodging, LLC's (the "Defendant") Motion for Relief from Stay as well as on the Defendant's Motion to Dismiss the Trustee's Complaint to Avoid Mortgage Lien.

## FACTS

HIE of Effingham, LLC (the "Debtor") filed a petition under Chapter 11 on September 27, 2010. Prior to and throughout the course of its Chapter 11 case, the Debtor operated a Holiday Inn Express in Effingham, Illinois.

In 2007, the Debtor borrowed $7.2 million from Barclays Capital Real Estate, Inc. In exchange, the Debtor granted Barclays a mortgage lien against the hotel, as well as a security interest in substantially all of the Debtor's other assets, including revenues. The loan and mortgage were subsequently transferred to the Defendant pre-petition.

The mortgage was recorded in the office of the Effingham County Recorder on July 24, 2007.  The mortgage states that it is given in favor of Barclays Capital Real Estate, Inc. and that it secures an obligation in the maximum principal amount of $7,200,000.00.  It is undisputed that the mortgage states neither the interest rate nor the maturation date of the underlying indebtedness.  However, it does include the following provisions:

> Section 3.01    Debt.  This Security Instrument and interests created in favor of Lender hereunder are given for the purpose of securing (a) payment of principal, interest and all other amounts due at anytime under the Loan Agreement, the Note and each of the other Loan Documents. . . .
>
> Section 8.01    Incorporation from Loan Agreement.  All provisions of Articles 17 and 18, inclusive of the Loan Agreement are incorporated into this Security Interest by this reference, as if fully reproduced herein.

*See Plaintiff's Complaint to Avoid Mortgage*, Exhibit A (Adv. Doc. 1-1).

On March 22, 2011, while the case was in Chapter 11, the Defendant filed a Motion for Relief from Stay (BK Doc. #102).  The motion requested that the Defendant be granted relief from the automatic stay to pursue all of its state law rights and remedies against the Debtor and its assets, including the hotel.  The motion did not, however, request abandonment, nor was a separate Motion for Abandonment filed with the Court.  The Motion for Relief from Stay and the accompanying notice were served on the Debtor, Debtor's counsel, the United States Trustee, and counsel for interested parties, Holiday Hospitality Franchising and Heritage Builders of Effingham.  *See* BK Docs. # 102 and #103.  No other creditors were served with the motion.

A trial on the Motion for Relief from Stay was scheduled for January 4, 2012.[1]   After extensive negotiation, the Defendant and the Debtor, along with counsel for the United States Trustee, appeared before the Court and announced that they had reached a resolution.  The

---

[1]Because of on-going settlement negotiations, the Debtor and the Defendant requested numerous continuances of the trial on the Motion for Relief.

parties represented that pursuant to their agreement, the automatic stay would remain in place for

90 days in order to permit the Debtor to pay the Defendant $7.5 million in full satisfaction of the

Defendant's claims. If the Debtor failed to pay the Defendant within the allotted 90-day period,

the Defendant would not only be entitled to relief from stay, but it was agreed that the Debtor's

case would be converted to a proceeding under Chapter 7 *and* the hotel would be deemed

abandoned.   Upon hearing the parties' agreement, the Court expressed reservations about the

propriety of abandoning the property. Trial Transcript, p. 6, Jan. 4, 2012.  However, the Court

was assured by the parties that abandonment in this instance would be "fine."  *Id.*  Based on this

representation, the parties were directed to submit a stipulated order reflecting their settlement.

A Stipulation and Agreed Order was entered by this Court on January 18, 2012

memorializing the parties' agreement.  Paragraph (4)(c) of the stipulation provided that if the

Debtor failed to make any of the payment obligations as agreed, the bankruptcy case would be

immediately converted to Chapter 7 and "the Hotel [would] be deemed abandoned pursuant to 11

U.S.C.§ 554."  The Debtor also agreed, in the event that payment was not made, that it would

> (i) not contest or oppose in any way the Foreclosure Case or any and all other
> rights and remedies that [Defendant] may choose to exercise against the Debtor
> and/or the Hotel under the Loan Documents; (ii) not raise or file any affirmative
> defenses, claims or counterclaims against [Defendant] in the Foreclosure Case or
> otherwise; (iii) be deemed to have waived and released any and all claims and/or
> causes of action that it might have against [Defendant] related to the Loan and/or
> any of the Loan Documents . . . .

Stipulation at ¶ 4.  Defendant acknowledges that the January 18, 2012 Order was not served on

all creditors.  *See Defendant's Objection to Motion to Modify Stipulation and Agreed Order* ¶ 35

(the "overwhelming majority" of the creditors received notice).

The Debtor failed to make the payments as required.  Consequently, the case was

converted to a proceeding under Chapter 7 on May 11, 2012.  Plaintiff Robert Bruegge

("Trustee") was appointed Trustee to administer the Debtor's estate.

On August 7, 2012, the Trustee filed a complaint to avoid the Defendant's mortgage lien on the hotel property pursuant to 11 U.S.C.§ 544(a)(3).  The basis of the complaint is that because the interest rate and maturity date of the indebtedness are not set forth on the face of the mortgage, the Defendant's mortgage fails to comply with the Illinois Conveyances Act and, therefore, is invalid as to the Trustee as a bona fide purchaser of the real property.   In conjunction with his complaint, the Trustee has also filed a Motion to Modify the Agreed Order entered January 18, 2012.  He requests that the Court strike the abandonment portion of the order because the parties and the Court failed to comply with the requirements of 11 U.S.C. § 554 and Federal Rule of Bankruptcy Procedure 6007.  Specifically, the Trustee maintains that the abandonment is ineffective because the Defendant failed to provide notice of the proposed abandonment to all creditors.

For its response, the Defendant has moved to dismiss the Trustee's complaint for failure to state a cause of action. It also objects to modification of the January 18, 2012 Order.  The Defendant's Motion to Dismiss is predicated on three arguments. First, the Defendant maintains that the hotel is not property of the Debtor's estate because it was deemed abandoned prior to the conversion of the case to Chapter 7.  Alternatively, it argues that even if the hotel has not been abandoned, the Chapter 11 debtor in possession previously admitted that the Defendant's mortgage lien is valid and, therefore, waived the estate's right to now challenge the lien's validity.  Finally, the Defendant asserts that it does, in fact, hold a valid, perfected mortgage lien that is sufficient to impart constructive notice of the Defendant's interest to a bona fide purchaser. Hence, it argues, the Trustee has failed to state a cause of action.

This Court will first address the issue of abandonment. "Abandonment is a term of art

with special meaning in the bankruptcy context.  It is the formal relinquishment of the property

at issue from the bankruptcy estate." *Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002).   The

requirements for an effective abandonment are set forth in § 554 of the Bankruptcy Code.  It

states, in pertinent part:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is
> burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may
> order the trustee to abandon any property of the estate that is burdensome to the
> estate or that is of inconsequential value and benefit to the estate.
>
> * * *
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned
> under this section and that is not administered in the case remains property of the
> bankruptcy estate.

11 U.S.C. § 554.

Section 554 must be read in tandem with Federal Rule of Bankruptcy Procedure 6007,

which delineates the procedural requirements for effectuating abandonment.  Rule 6007 provides

as follows:

> **(a) NOTICE OF PROPOSED ABANDONMENT OR DISPOSITION;
> OBJECTIONS; HEARING.**  Unless otherwise directed by the court, the trustee
> or debtor in possession shall give notice of a proposed abandonment or
> disposition of property to the United States trustee, all creditors, indenture
> trustees, and committees elected pursuant to § 705 or appointed pursuant to
> § 1102 of the Code.  A party in interest may file and serve an objection within 14
> days of the mailing of the notice, or within the time fixed by the court.  If a timely
> objection is made, the court shall set a hearing on notice to the United States
> trustee and to other entities as the court may direct.
>
> **(b) MOTION BY PARTY IN INTEREST**.  A party in interest may file and
> serve a motion requiring the trustee or debtor in possession to abandon the
> property of the estate.

Fed. R. Bankr. P. 6007(a) and (b).   Failure to comply with the requirements of § 554 and/or Rule

6007 renders a proposed abandonment ineffective. *Morlan v. Universal Guaranty Life Ins. Co.*,

298 F.3d 609, 618 (7th Cir. 2002); *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789

F.2d 705, 709 (9th Cir. 1986); *In re Clower,* 463 B.R. 573 (Bankr. N.D. Ga. 2011); *In re Sneijder*,

407 B.R. 46, 50, n. 4 (Bankr. S.D.N.Y. 2009); *In re Missouri River Sand & Gravel, Inc.*, 88 B.R.

1006, 1010 (Bankr. N.D. Ill. 1988); *In re Caron*, 50 B.R. 27, 29 (Bankr. N.D. Ga. 1984).

Section 554 (a) confers the authority to abandon estate property on a trustee or debtor in

possession[2] upon the filing of a notice. Rule 6007(a) is clear that said notice must be served on

all creditors and parties in interest.  The power to seek abandonment is extended to parties in

interest through § 554(b) and Rule 6007(b).  Unlike a trustee, however, an interested party may

not simply file a notice of proposed abandonment. Rather, it must file and serve a motion

requesting that the trustee abandon the property. The service requirements set forth in Rule

6007(a) are not reiterated in subsection (b).  Therefore, the Defendant maintains that service on

all creditors is not required when abandonment is sought by a creditor or other interested party.

This Court disagrees.  For the reasons set forth below, the Court concludes that the

service requirements of Rule 6007(a) are incorporated into Rule 6007(b) and all creditors must

receive notice of a proposed abandonment.

A fellow bankruptcy judge in this Court, Judge Grandy, recently addressed this very issue

in *In re Nordike*, 2013 WL 66262 (Bankr. S.D. Ill. Jan.4, 2013).  *In Nordike*, creditor Carrollton

Bank ("Carrollton") filed a combined Motion for Relief from Stay and Abandonment. The

motion was not served on all parties, but, rather, was served only on the debtor, the Chapter 7

Trustee, the United States Trustee and another lending institution.  There were no objections to

Carrollton's request and the Court entered an order granting relief from the stay and

---

[2]Section 554(a) refers only to a "trustee."  However, under 11 U.S.C. § 1107(a), the debtor in possession has the rights of the trustee. For purposes of this discussion, when the Court references a "trustee," it is also referring to a debtor in possession.

abandonment on March 15, 2012.  On August 29, 2012, the Chapter 7 Trustee moved to strike the abandonment portion of the order on the grounds that Carrollton's motion had not been served on all parties as required by § 554(a).  An unsecured creditor, Consumer Collection Management (CCM), subsequently joined in the Trustee's motion.

In granting CCM's motion through joinder, Judge Grandy held that "the express language of Rules 6007(a) and (b) demands that all creditors receive notice of a proposed abandonment, regardless of whether the abandonment is sought by a trustee, a debtor in possession, or a creditor or other party in interest." *Id.* at *7.  Hence, because the combined motion for relief from stay and abandonment was not served on all creditors, the Court ruled that it was "ineffective to cause the abandonment of the real property from the bankruptcy estate and render[ed] revocable the abandonment provisions of the March 15, 2012 order." *Id.*

As the Court noted in *Nordike*, only the trustee has standing to abandon estate property. *Id*. at *4; *In re Wideman*, 84 B.R. 97, 101 (Bankr. W.D. Tex. 1988); *In re Gantt*, 98 B.R. 770, 771 (Bankr. S.D. Ohio 1989).  Therefore, when a creditor or other interested party files a motion for abandonment pursuant to Rule 6007(b) they are, in effect, asking that the Court compel the *trustee* to abandon the property from the estate. "Rule 6007(b) contemplates that a secured creditor or other party in interest has requested the trustee to voluntarily abandon property pursuant to 6007(a) and that the trustee, for such reasons that the trustee deems appropriate, has declined to do so."  *In re Preston*, 82 B.R. 28, 30 (Bankr. W.D. Va. 1987).  Because the trustee is the party who ultimately abandons the property, whether on his own accord or at the request of a party in interest pursuant to Court order, this Court believes that the provision of Rule 6007(a) requiring notice to all creditors applies.

The court's reasoning in *In re Caron*, 50 B.R. 27 (Bankr. N.D. Ga. 1984) is instructive on

this point. In *Caron*, the court refused to grant a motion for entry of a consent order for

abandonment where insufficient notice was given. The consent motion, along with a proposed

consent order signed by the trustee, a secured creditor, and debtor's counsel, was tendered to the

court. The motion was not, however, served on all creditors. In denying the motion, Judge

William L. Norton, Jr. explained:

> [C]ooperative consent between the creditor, the debtor and the trustee actually
> short circuits the required procedure of notifying 'all creditors, indenture trustees
> and committees' and allowing such parties in interest sufficient time to file an
> objection as is required under Rule 6007(a) [and] (b). . . .The fact that Subdivision
> (b) of the rule permits a creditor to file a motion for abandonment does not cancel
> the notification requirement specified in Subdivision (a). . . .
>
> * * *
>
> Here, both the trustee and the debtor agreed in advance to the motion of the party
> in interest for abandonment. Does that mean that no other parties in interest need
> be given notice of this Motion for Abandonment? This Court answers in the
> negative. The Court holds that the consent of the creditor, the trustee and the
> debtor together cannot be used to circumvent the notification to all creditors as
> provided in the rule. A Rule 6007(b) motion by a party in interest agreed to by
> the trustee (and the debtor) is the equivalent of the trustee making a motion under
> Subdivision (a) of Rule 6007 to abandon property. Subdivision (a) specifically
> requires notice to all parties in interest. . . . *There is no less reason that all parties*
> *in interest should receive notification of the Rule 6007(b) motion of a party in*
> *interest to require the trustee to abandon property than there is for all parties in*
> *interest to receive notification of the Rule 6007(a) notice of the trustee to abandon*
> *property. The purpose of the notification to parties in interest is to provide an*
> *opportunity for any potential opposition to the abandonment of such property to*
> *file objections and be heard by the Court.*

*Id*. at 29-30 (emphasis added).

Admittedly, Rule 6007(a) permits the Court to authorize service other than as prescribed

in the Rule.[3] The Court can modify the parties entitled to notice either by local rule or by order

in a specific case. *See* 10 COLLIER ON BANKRUPTCY ¶ 6007.02[1][a]. Despite Defendant's

assertions to the contrary, the Court did not authorize truncated service in this case. At no time

---

[3] The introductory clause of Rule 6007(a) provides "*Unless otherwise directed by the court,*" the trustee or debtor in
possession shall give notice of a proposed abandonment to all creditors.

8

did the Defendant request that service be limited to interested parties.[4]

Further, the Defendant's reliance on this Court's Local Rules is misplaced. Local Rule 4001-1, which was in effect at the time that January 18, 2012 stipulated order was entered,[5] provided in pertinent part:

**4001-1.   Relief from Stay Motions.**

A motion for relief from stay must be filed as a separate pleading, except such motion may also include a request for abandonment or adequate protection. . .

Bankr. S.D. Ill. Local R. 4001-1 (1996).  The Defendant asserts that because the Rule allowed a movant to request abandonment within a motion for relief from stay, service was only required on all respondents and parties in interest (*i.e.* the service requirements for a motion for relief from stay). A careful reading of Rule 4001-1, however, indicates that this provision merely creates an exception to the Court's prohibition against multiple requests for relief within a motion for relief from stay   The Rule is silent as to the service requirements for abandonment and cannot be construed as directing service other than as provided in the Federal Rules of Bankruptcy Procedure.

Even if this Court were to conclude that Rule 6007(b) does not require service on all creditors, there are other procedural defects in this case that are fatal to the Defendant's cause. First, § 554(b) and Rule 6007(b) make clear that requests for abandonment by an interested party must be made on *motion* and may only be granted after *notice and a hearing*.  The Defendant in this case, contrary to the express requirement of Rule 6007(b), did not file a motion for abandonment, nor did it request abandonment in its motion for relief from stay.  Instead, its

---

[4]At least one court has held that the service requirements of Rule 6007 may only be modified on motion filed prior to the request for abandonment.  *See Caron*, 50 B.R. at 32.

[5]The Court adopted new Local Rules on June 1, 2012. Rule 4001-2 addresses Motions for Relief from Stay and is substantially similar to former Rule 4001-1.

"request" for abandonment was made orally at the January 4, 2012 hearing and was incorporated into a stipulated *order* resolving a motion for relief from stay.

Further, creditors and interested parties were not provided with sufficient notice of the proposed abandonment. Rule 6007 "requires that reasonable notice must be given to all creditors of a motion to abandon property so that they have an *opportunity to object or approve.*" *In re Howard National Corp.*, 70 B.R. 278, 282 (N.D. Ill. 1987) (emphasis added).  No such notice was afforded here.  Certainly, as the Defendant notes, an objecting party could have challenged the abandonment by moving to vacate the January 18, 2012 Order.  However, the Court does not believe that this is the type of "notice and a hearing" contemplated by the Code.  As the Supreme Court explained in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance.

*Id.*  In this case, creditors and interested parties received *no* notice of the proposed abandonment prior to the entry of the Court's January 18, 2012 Order.

Finally, both § 554(a) and (b) of the Code provide that prior to ordering abandonment, the bankruptcy court "must find either: (1) the property is burdensome to the estate; *or* (2) the property is both of inconsequential value *and* inconsequential benefit to the estate." *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 245 (6th Cir. 1987).  *See also In re Viet Vu*, 245 B.R. 644 (9th Cir. BAP 2000); *In re Johnston,* 49 F.3d 538, 540 (9th Cir. 1995); *In re Neill*, 1989 WL 1681501 (Bankr. S.D. Iowa).  Absent this determination, there cannot be an effective abandonment. *In re Sullivan & Lodge, Inc.*, 2003 WL 22037724 at *4 (N.D. Cal. Aug. 20, 2003) (abandonment

improper "without the requisite showing that the asset in question was of inconsequential value and benefit to the estate."). Here, the Court's January 18, 2012 Order is silent as to whether the hotel property was burdensome to the estate or whether it was of inconsequential value and benefit to the estate. Accordingly, it fails to comply with § 554 of the Bankruptcy Code.

Certainly, the Defendant is correct in asserting that, as a general rule, abandonment of estate property is irrevocable except in limited circumstances. *Morlan v. Universal Guaranty Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002); *Chartschlaa v. Nationwide Mutual Ins.* Co., 538 F.3d 116, 123 (2d Cir. 2008); *Catalano v. Commissioner*, 279 F.3d 682, 686 (9th Cir. 2002); *In re American Remanufacturers, Inc.*, 439 B.R. 633 (Bankr. D. Del. 2010). However, this rule is predicated on the assumption that the abandonment was properly granted. *Nordike*, 2013 WL 66262 at *7. Where a trustee or interested party is not in compliance with § 554, an abandonment is ineffective. *Morlan*, 298 F.3d at 618. As the Seventh Circuit has explained, "[*t]he requirements [for abandonment] are exacting*, in recognition of the potential harm to creditors from the trustee's abandoning property to which they would otherwise be entitled. . . ." *Id*. (emphasis added).

Given the number of procedural deficiencies in this case, the Court has no choice but to conclude that the purported abandonment was ineffective. Accordingly, the Court rejects abandonment as a basis for dismissing the Trustee's complaint. Further, based on the foregoing, the Trustee's motion to modify the January 18, 2012 Stipulation and Agreed Order is granted and any provisions in said order purporting to abandon the hotel property are stricken.

The Court will now address the Defendant's second basis for seeking dismissal which is based on the concepts of estoppel and waiver. It asserts that while the case was in Chapter 11, certain cash collateral orders were entered in which the debtor in possession acknowledged that

Defendant held a valid and perfected lien.  The Defendant posits that these agreements are now

binding on the Chapter 7 Trustee and, accordingly, the Trustee is estopped from challenging the

mortgage's validity.

The relevant portions of the cash collateral orders provided:

> As adequate protection for the Lender's interests as of the Petition Date in the
> Prepetition Collateral, the Lender is granted, pursuant to §§ 361 and 363 of the
> Bankruptcy Code, valid perfected, enforceable and non-avoidable security
> interests in and liens and mortgages upon all assets and property of the Debtor and
> the Estate, of any kind or nature whatsoever, whether now existing or hereafter
> acquired or arising, and all proceeds, rents, products, or profits thereof
> (collectively, the "Postpetition Collateral" and, together with the Prepetition
> Collateral, the "Collateral"), including, without limitation the Prepetition
> collateral owned by the Debtor as of the Petition date and all proceeds, rents,
> products, or profits thereof, to the same extent and priority as the Lender's
> prepetition security interests, liens and mortgage.  Such security interests, liens
> and mortgage shall at all times be senior to the rights of the Debtor and any
> successor trustee in these or any subsequent proceedings under the Bankruptcy
> Code and shall be superior in priority to the Lender's security interests, lien and
> mortgage existing prior to the Petition Date.  Notwithstanding the foregoing, the
> Lender is not granted a security interest or lien in any cause of action of the Estate
> arising solely under §§ 544, 545, 547, 548, 549 or 533(b) of the Bankruptcy Code.
> The liens, security interests, mortgage, rights and remedies granted to the Lender
> pursuant to this Interim Order shall not be modified, altered or impaired in any
> manner by any plan of reorganization or order of confirmation for the Debtor.

BK Doc. #54 at ¶ 10.  *See also* BK Doc. #79 at ¶ 9; BK Doc. #122 at ¶ 10.

Although not expressly stated, it appears that the Defendant is relying on principles of *res*

*judicta*[6] and collateral estoppel to support its claim. Under the doctrine of *res judicata*, "a

judgment on the merits in a prior suit bars a second suit involving the same parties or their

privies based on the same cause of action." *Parklane Hoisery Co. v. Shore,* 439 U.S. 322, 326

n.5, 99 S.Ct. 645, 649, 58 L.Ed. 552 (1979).  In order for *res judicata* to preclude a subsequent

action, the Court must look at whether "(1) the prior decision was a final judgment on the merits;

(2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4)

---

[6]This is the Trustee's characterization of the Defendant's argument to which there was no objection.  The Court has
doubts as to whether this is the appropriate legal principal.

the causes of action were the same." *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006).

In *In re Broadway City, LLC*, 358 B.R. 628 (Bankr. S.D.N.Y. 2007), the court examined whether language in a cash collateral order which purported to recognize the validity of a creditor's lien precluded a subsequent Chapter 7 Trustee from bringing an avoidance action pursuant to 11 U.S.C. § 544. The *Broadway City* court found that "a determination pursuant to a cash collateral order that [a] . . . lien is deemed valid is not equivalent to a determination that such lien may not be avoided in subsequent litigation brought by the Trustee. . . ." *Id.* at 631. It explained:

> The two proceedings are procedurally distinct. The motion [for use of cash collateral] did not state a cause of action at all but commenced a contested matter to obtain authority to use cash collateral upon a finding that Chitech was adequately protected. In contrast, any adjudication as to the extent, validity or priority of any interest in property, pursuant to Bankruptcy Rule 7001(2), must be determined by means of an adversary proceeding, not by motion.
>
> Importantly, the Cash Collateral Order did not dispose of potential avoidance actions. . . . *[A]lthough the validity of Chitech's lien was resolved as part of the stipulated Cash Collateral Order, that is not the same as determining that the lien may not be avoided.*
>
> [Creditor] confuses deemed validity of its assignee's lien with incontestibility and immunity from litigation.

*Id.* at 635-36 (emphasis added).

This Court agrees with the reasoning in *Broadway City* and concludes that the Trustee's avoidance action is not barred by *res judicata*. The cash collateral orders did not contain any provision regarding non-avoidability of *prepetition* liens. A careful reading of the cash collateral order reveals that the stipulation regarding non-avoidability applied only to the post-petition liens granted by the debtor in possession as adequate protection. Further, the recitals contained only a stipulation that the Defendant had "a valid and perfected first priority security interest." *See* BK. Doc. # 54 at ¶ 10, BK Doc. #79 at ¶ 9; BK Doc. # 122 at ¶ 10. This is not the same as a

stipulation that the subject liens were unavoidable. Accordingly, *res judicata* is inapplicable.

Further, the Trustee's avoidance action is not barred by collateral estoppel. Collateral estoppel, or issue preclusion, "bars relitigation of issues that were actually and necessarily decided in prior litigation between the parties." *Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1234 (7th Cir. 1990). It "prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 62 (2nd Cir. 1989). "If an issue was not actually decided in an earlier proceeding, or if its decision was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel." *In re Hooker Investments, Inc.*, 131 B.R. 922, 931 (Bankr. S.D.N.Y. 1991), *quoting Jim Beam Brands Co. v. Beamish & Crawford Ltd*., 937 F.2d 729 (2nd Cir. 1991).

In the instant case, as previously explained, the issue of whether the Defendant's mortgage was avoidable was not actually decided as part of the parties' cash collateral orders, nor was a determination of avoidability necessary for conditioning the use of cash collateral.[7] Hence, collateral estoppel does not prevent the Trustee from bringing his avoidance complaint.

In addition to its estoppel arguments, the Defendant also argues that a waiver made by the debtor in possession in the January 18, 2012 Order prevents the Trustee from now challenging the validity of the Defendant's mortgage. Paragraph 4 of the Order provided in pertinent part:

> If on or before the Stay Deadline the Debtor does not satisfy the Payment obligations in full, then: (a) the automatic stay shall be immediately lifted and/or modified in favor of Lender as of the Stay Deadline to permit Lender to purse the Foreclosure Case and any and all other rights and remedies it might have against

---

[7]As the court explained in *Broadway City*, "Ordinarily, these cash collateral stipulations reflect negotiation and compromise and are intended to give adequate protection only to parties claiming an interest in cash collateral (as that term is defined in § 363(a) of the Bankruptcy Code). Questions of lien validity are often tabled so that the debtor's urgent need for cash can be met and possibly time consuming litigation deferred or avoided." *Broadway City*, 358 B.R. at 634.

the Debtor and/or the Hotel under the Loan Documents; (b) the debtor shall (i) not contest or oppose in any way the Foreclosure Case or any and all other rights and remedies that Lender may choose to exercise against the Debtor and/or the Hotel under the Loan Documents, (ii) not raise or file any affirmative defenses, claims or counterclaims against Lender in the Foreclosure Case or otherwise; (iii) *be deemed to have waived and released any and all claims of action that it might have against Lender related to the Loan and/or any of the Loan Documents*. . .

Stipulation at ¶ 4 (emphasis added).   The Defendant maintains that pursuant to subsection (iii), the debtor in possession expressly waived the Estate's right to challenge the sufficiency of the Defendant's loan documents and, therefore, the Trustee, as its successor, has no cause of action.

The debtor in possession purportedly waived its right to challenge the Defendant's loan documents as part of an agreed order resolving a motion for relief from stay.  The Seventh Circuit discussed the scope of relief from stay actions in *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990).  In concluding that litigation of a motion for relief from stay did not preclude the Trustee from bringing, *inter alia*, a complaint to avoid the lien as a preferential transfer, the Court explained:

> [A] hearing on a motion to lift the automatic stay under § 362(d) is limited in scope.  Questions of the validity of liens are not generally at issue in a § 362 hearing, but only whether there is a *colorable* claim of a lien on property of the estate. . .   The doctrine of collateral estoppel bars relitigation of issues that were actually and necessarily decided in prior litigation between the parties. . . The doctrine of res judicata bars suit on matters which were raised or could have been raised in previous litigation between the parties. . .  Collateral estoppel is not a bar because the only issues necessarily decided at a § 362 hearing were whether the Bank had a colorable claim of a lien and whether the amount of that lien exceeded the value of the property.  It was not necessary to reach questions [concerning collusion], or questions of preferential transfers under § 547 or questions of fraudulent conveyances under § 548, or questions of commercial reasonableness of the sale under state law.  Indeed, none of these issues could properly have been raised, and therefore the § 362 hearing was not res judicata to those issues.

*Id*. at 1234 (internal citations omitted). *See also Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 34 (1st Cir. 1994) ("[i]n a relief from stay hearing, the only issue properly before the court, and thus the only one actually adjudicated, is whether the stay should be lifted because the creditor

has shown a colorable claim."); *In re Lebbos*, 455 B.R. 607, 615 (Bankr. E.D. Mich. 2011) ("any determination under §362(d) is narrowly limited to whether a creditor has a colorable claim against property of the estate. Any decision would be made solely on the statutory grounds expressed in § 362(d). The possible avoidability of a transfer under § 547 or lien avoidance based on a trustee's invocation of his strong arm powers under § 544 are beyond the scope of a court's limited inquiry under § 362(d)").

Because of the limited nature of a relief from stay action, this Court agrees with the Trustee that the stipulated order resolving the Defendant's motion for relief from stay has no bearing on the present avoidance action. Certainly, the agreed relief order did contain a waiver regarding claims or causes of action based on the Defendant's loan documents. However, because the order did not address avoidability in any way, this Court concludes that this waiver was intended to apply in the context of any post-conversion foreclosure action brought by the Defendant, and not to an avoidance action brought by a successor trustee.

Based on the foregoing, this Court concludes that the Trustee is not estopped by either the Chapter 11 cash collateral orders or the January 18, 2012 relief from stay order from bringing a complaint to avoid the Defendant's mortgage.

Finally, this Court will address the Defendant's last basis for its Motion to Dismiss. The Trustee's complaint asserts that the Defendant's mortgage on the hotel property fails to comply with the requirements of § 11 of the Illinois Conveyances Act and, therefore, is invalid as to a bona fide purchaser such as the Trustee. Specifically, the Trustee maintains that the lack of a stated interest rate and maturity date renders the mortgage deficient for purposes of imparting constructive knowledge to a bona fide purchaser. For its part, the Defendant moves to dismiss the complaint on the grounds that it fails to state a cause of action pursuant to Federal Rule of

Civil Procedure 12(b)(6).  It contends that contrary to the Trustee's assertions, applicable law

does not require recitation of the interest rate and maturity date on the face of the mortgage, but,

rather, permits incorporation of those terms by reference to the underlying promissory note.

Therefore, the  Defendant argues, the mortgage is valid and is sufficient to provide constructive

notice to the Trustee.

Section 544(a)(3) states:

(a)  The Trustee shall have, as of the commencement of the case, and without
regard to any knowledge of the trustee or any creditor, the rights and powers of,
or may avoid any transfer of property of the debtor or any obligation incurred by
the debtor that is voidable by—

* * *

(3)  a bona fide purchaser of real property, other than fixtures, from
the debtor, against whom applicable law permits such transfers to
be perfected, that obtains the status of a bona fide purchaser and
has perfected such transfer at the time of the commencement of the
case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).  This section confers on the trustee at the commencement of the

bankruptcy case, "the hypothetical status, rights and powers of a bona fide purchaser of real

property who has perfected the transfer of real property from the debtor at the time of the

bankruptcy filing."  *In re Berg*, 387 B.R. 524, 559 (Bankr. N.D. Ill. 2008).  The trustee may

avoid any transfer of the debtor's property that a hypothetical bona fide purchaser could avoid,

"without regard to any knowledge of the trustee or of any creditor."  *Id.*

Illinois law defines a bona fide purchaser as "one who acquires an interest in property for

valuable consideration without actual or constructive notice of another adverse interest in the

property." *Goldberg v. Ehrlich (In re Ehrlich)*, 59 B.R. 646, 650 (Bankr. N.D. Ill. 1986). Section

544(a)(3) specifically provides that a trustee cannot be charged with actual notice. However, the

trustee cannot avoid an interest under § 544(a)(3) of which he or she has constructive notice. *In*

*re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir. 1986).

Constructive notice is "notice that is deemed to be provided by an instrument of conveyance that is both sufficient in substance and properly recorded in the statutory office designed to maintain land title records for the county in which the subject real estate is located." *In re Shara Manning Properties, Inc.*, 475 B.R. 898, 906 (Bankr. C.D. Ill. 2010). Constructive notice can take two forms: record notice and inquiry notice. *In re Polo Builders*, 433 B.R. 700, 707 (Bankr. N.D. Ill. 2010); *Ehrlich*, 59 B.R. at 650; *In re Bulgarea*, 2010 WL 3614278 (Bankr. N.D. Ill. 2010); *US Bank Nat. Ass'n. v. Villasenor*, 2012 WL 4761748 (Ill. App. 1st Dist., Oct. 5, 2012). Record notice "imputes to a purchaser knowledge that could be gained from an examination of the grantor-grantee index in the office of the Recorder of Deeds, as well as the probate, circuit, and county court records for the county in which the land is situated." *Ehrlich*, 59 B.R. at 650. Inquiry notice, on the other hand, charges to a purchaser knowledge of facts that a diligent inquiry would have brought to light. *Miller v. Bullington*, 381 Ill. 238, 243, 44 N.E.2d 850, 852 (1942). As the Illinois Supreme Court explained:

> One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation.

*Id.*

There is no dispute that the Defendant's mortgage was recorded in the Office of the Effingham County Recorder on July 24, 2007 and that the Trustee had record notice of its existence. The inquiry then becomes whether the information contained on the face of the Defendant's mortgage was sufficient pursuant to Illinois law to put the Trustee on inquiry notice of the Defendant's interest.

Section 11 of the Conveyances Act prescribes the statutory form for mortgages in Illinois.

It states, in pertinent part:

> §11 Mortgages of lands may be in substantially the following form:
>
> The mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (here insert description thereof), situated in the County of . . ., in the State of Illinois.
>
> Dated (insert date):
>
> (signature of mortgagor or mortgagors)
>
> * * *
>
> Such mortgage, when otherwise properly executed, shall be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified. . . .

765 ILCS 5/11 (2011).

The mortgage instrument in this case is titled "Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing" and provides, in part:

> THIS MORTGAGE ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING ("**Security Instrument**") is made as of this 23rd day of July, 2007 by HIE OF EFFINGHAM, LLC, an Illinois limited liability company, as mortgagor ("**Borrower**"), to BARCLAYS CAPITAL REAL ETATE, INC., a Delaware corporation, as mortgagee (together with its successors and assigns, "**Lender**").

> ### BACKGROUND
>
> Borrower and Lender are entering into a certain Loan Agreement of even date herewith ("**Loan Agreement**") pursuant to which Lender will make a loan ("**Loan**") to Borrower in the maximum principal amount of $7,200,000.00. The Loan also will be evidenced by Borrower's promissory note to Lender of even date herewith ("**Note**"). Borrower desires to secure payment and performance of Borrower's obligations in respect of the Loan by granting to Lender the security described in this Security Instrument

NOW THEREFORE, to induce Lender to make the Loan to Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Borrower agrees as follows:

## ARTICLE I

\* \* \*

Section 2.01.  <u>Property Mortgaged</u>.  Borrower does hereby irrevocably deed, mortgage, grant, bargain, sell, assign, pledge, warrant, transfer and convey to Lender, and to its successors and assigns as Lender, as security for the Obligations, with power of sale, the following property, rights, interests and estates, now owned or hereafter acquired by Borrower (collectively, **"<u>Property</u>"**) . . . .

*See Plaintiff's Complaint to Avoid Mortgage*, Exhibit A (Adv. Doc. 1-1).  The instrument then specifies the property covered by the Defendant's a security interest, including the Debtor's land (which is fully described in Exhibit A to the mortgage), improvements, easements, fixtures and personal property, leases and rents, intangibles and accounts.  *Id*.

Article III of the mortgage addresses the obligations secured.  It states:

## ARTICLE III

Section 3.01.  <u>Debt</u>.  This Security Interest and the interests created in favor of Lender hereunder are given for the purpose of securing (a) payment of principal, interest and all other amounts due at anytime under the Loan Agreement, the Note and each of the other Loan Documents, including, without limitation, interest at the Default Rate, any late fee for delinquent payments, Prohibited Prepayment Fee, the Prepayment Fee and the Exit Fee (if any) provided in the Loan Agreement, and amounts advances by Lender to protect and preserve the Property and the Liens hereby created for the benefit of Lender (collectively **"<u>Debt</u>"**), and (b) performance of all obligations of Borrower contained in the Loan Agreement, the Note and each of the other Loan Documents (collectively with the Debt, **"<u>Obligations</u>"**). . . .

*Id*.

Finally, the mortgage bears the signature of Charles F. Keller, Managing Member of

mortgagor HIE of Effingham:

IN WITNESS WHEREOF, the undersigned hereby signs, seals and delivers this Security Instrument.

HIE OF EFFINGHAM, LLC.
an Illinois limited liability company

By: _____
Name:  Charles F. Keller
Title:    Managing Member

STATE OF _Illinois_ )
COUNTY OF _Effingham_ )

I, the undersigned, a Notary Public in and for the said County, in the State aforesaid, DO HEREBY CERTIFY that Charles F. Keller, personally known to me to be the Managing Member of HIE OF EFFINGHAM, LLC, an Illinois limited liability company, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that as such president, he signed and delivered the said instrument, pursuant to authority as his free and voluntary act, and as the free and voluntary act and deed of said limited liability company, for the uses and purposes therein set forth.

GIVEN under my hand and official seal this _18th_ day of _July_, 2007.

"OFFICIAL SEAL"
Tina Lou Banning
Notary Public, State of Illinois
My Commission Exp. 03/21/2008

_____
Notary Public

*Id*.

Whether a mortgage instrument is sufficient to impart constructive notice of an interest in property "depends upon the quantum of information contained within the document and whether that information is sufficient to place a reasonable person on notice of the prior interest." *In re Klasi Properties, LLC*, 2013 WL 211111 (Bankr. S.D. Ill.) at *4. In this case, seven of the nine "identifiers" enumerated in § 11 are present,[8] and, in this Court's view, is sufficient to meet this standard.

---

[8] The mortgage instrument in this case (1) names the mortgagor, (2) names the mortgagee, (3) states the nature of the indebtedness, (4) states the amount of the indebtedness it secures, (5) indicates that indebtedness is secured by a promissory note, (6) includes the legal description of the property subject to the mortgage, and (7) bears the signature of the mortgagor.

However, the Trustee maintains that § 11 requires that a mortgage also recite the interest rate and maturation date of the underlying indebtedness on its face and that an instrument that fails to do so is insufficient to impart constructive notice to a bona fide purchaser such as the Trustee.

In support of his position, the Trustee relies on two recent cases which held that the provisions of § 11 are mandatory and that failure to include all of its specified terms renders the mortgage ineffective as to a bona fide purchaser: *Peoples National Bank, N.A. v. Jones, et. al (In re Jones)*, 482 B.R. 257 (S.D. Ill. 2012) and *Richardson v. Gifford State Bank (In re Crane)*, 2012 WL 669595 (Bankr. C.D. Ill. Feb. 29, 2012).

In *Jones*, plaintiff Peoples National Bank ("Peoples"), a first priority mortgagee, brought an action in the Bankruptcy Court to determine the relative priority of liens between itself and another mortgagee, Banterra Bank.  Peoples and Banterra agreed that Peoples was entitled to be paid the balance of its first mortgage in full because Banterra had actual knowledge of that lien. The dispute centered on the validity of a second mortgage claimed by Peoples pursuant to a cross-collateralization clause in its mortgage.  The cross-collateralization clause provided that Peoples' mortgage secured not only the debtors' initial loan, but also any subsequent obligations owed by the debtors to Peoples.  Banterra challenged the validity of the cross-collateralization clause.  It asserted that because the cross-collateralization clause did not set forth the interest rate, maturity date, and amount of the indebtedness that it purported to secure, it failed to comply with Illinois law and was, therefore, invalid as to a third party purchaser without notice. *See In re Jones*, 2011 WL 6140686 (Bankr. S.D. Ill. Dec. 9, 2011).

The Bankruptcy Court rejected Banterra's argument and granted summary judgment in favor of Peoples.  On appeal, however, the United States District Court for the Southern District

22

of Illinois reversed the Bankruptcy Court and found that because the cross-collateralization

clause in Peoples' mortgage failed to describe the interest rate and date of maturity it was

"ambiguous" and "defective" as to a subsequent *bona fide* purchaser without notice. *Jones*, 482

B.R. at 264.  The District Court opined that "controlling Illinois law. . . requires a mortgage to

describe the nature of the debt secured, amount secured, due date and interest rate. . . ." *Id.* at

263.[9]

Similarly, in *Richardson v. Gifford State Bank (In re Crane)*, 2012 WL 669595 (Bankr.

C.D. Ill. Feb. 29, 2012), the Trustee sought to avoid two mortgages pursuant to § 544(a)(3) of the

Bankruptcy Code.  Although the mortgages in question stated the amount of the indebtednesses,

neither mortgage specified the interest rate or maturity date of the notes which they secured.  The

Trustee argued that this omission invalidated the mortgage instruments as to a bona fide

purchaser.  In ruling in favor of the plaintiff Trustee, the court opined that the provisions of § 11

are not permissive and that a mortgage that fails to include all of the specified terms is

insufficient to provide constructive notice to the Chapter 7 Trustee as a hypothetical bona fide

purchaser or Trustee in bankruptcy.

However, the United States District Court for the Central District of Illinois recently

reversed the Bankruptcy Court's decision in *Crane*.  *In re Crane*, 2013 WL 772829 (Bankr. C.D.

Illinois, February 28, 2013).[10]  The court held that § 11 "was intended to create a safe harbor,

rather than a mandatory checklist of requirements to be completed *pro forma*." *Id*. at *8.  The

---

[9]The ruling in *Jones* is presently on appeal.  *Peoples Nat'l Bank v. Jones et. al.*, 482 B.R. 257 (S.D. Ill. 2012), *appeal docketed* No. 12-3079 (7th Cir. Sept. 10, 2012).  It should be noted that while the District Court's opinion in *Jones* is persuasive, it is not binding on this Court.  Certainly, the reasoning of district judges is entitled to respect. However, "'the modern trend is that a bankruptcy court is not bound by *stare decisis* to follow the decision of a single district judge in a multi-judge district.'"  *In re Davis*, 352 B.R. 758, 764 (Bankr. D.S.C. 2006) *quoting In re Baker*, 264 B.R. 759, 762 (Bankr. M.D. Fla. 2001).  *See also In re Finley, Kimble, et. al,* 160 B.R. 882, 898 (Bankr. S.D.N.Y 1993); *In re Shattuc Cable Corp.*, 138 B.R. 557, 565-567 (Bankr. N.D. Ill. 1992).

[10]The Trustee appealed the District Court's decision in *Crane* to the Seventh Circuit Court of Appeals.  The appeal was docketed on March 8, 2013 as case number 13-1518.

Court explained:

> Since § 5/11 advises lenders how best to provide sufficient detail so as to provide constructive notice to a third party purchaser, this Court cannot permit the Trustee to avoid the mortgages in question because both were recorded, identified the Debtors, provided a description of the mortgaged property, set forth the amount and purpose of the indebtedness, and incorporated the interest rate and maturity date by reference to a promissory note.

*Id.*

   In the *Crane* opinion, the District Court positively cited a recent decision from this District—*Bruegge v. Farmers State Bank of Hoffman (In re Klasi Properties, LLC)*, 2013 WL 211111 (Bankr. S.D. Illinois, January 18, 2013).[11]  In *Klasi Properties*, defendant Farmers State Bank of Hoffman held a mortgage securing a principal indebtedness of $75,000.  It was undisputed that the mortgage instrument identified the parties, the subject property and the amount owed.  It did not state the interest rate or maturity date of the note on its face.  However, the mortgage included an incorporation clause which specifically stated that the terms of its promissory note were incorporated by reference.  In rejecting the Trustee's argument and granting summary judgment in favor of the defendant Bank, Judge Grandy held that the language of § 11 is permissive rather than mandatory and that the failure to set forth all of the specified terms on the face of the mortgage does not necessarily render the document deficient for purposes of constructive notice.

   One of the primary bases for the Court's decision in *Klasi Properties* was the language of § 11 itself.  "The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature." *Paszkowski v. Metro. Water Reclamation Dist. of Greater Chicago*, 213 Ill.2d 1, 7, 820 N.E.2d 401, 405, 289 Ill, Dec. 625, 629 (2004).  The best evidence of legislative intent is the language employed in the statute itself

---

[11]*Klasi Properties* was appealed directly to the United States Court of Appeals for the Seventh Circuit and docketed on February 7, 2013 as No. 13-1277.

which must be given its plain and ordinary meaning. *Paris v. Feder*, 179 Ill.2d 173, 177, 688

N.E.2d 137, 139, 227 Ill. Dec. 800, 802 (1997). Courts must assume that the words in a statute

mean what they say and say what they mean. *Bedroc Ltd., LLC v. United States*, 541 U.S. 176,

183 (2004). Here, § 11 of the Conveyances Act clearly states that a mortgage "may" include

certain provisions and that a mortgage may be "substantially" in the specified form. In common

usage, the word "may" is permissive and not mandatory. *Estate of Ahmed*, 322 Ill. App. 3d 741,

746, 750 N.E.2d 278, 281, 255 Ill. Dec. 697, 701 (1st Dist. 2001). *See also Lopez v. Davis*, 531

U.S. 230, 241 (2001) ("use of the permissive 'may'. . . contrasts with the legislators' use of a

mandatory 'shall' in the very same section."); *Rastelli v. Warden, Metro. Correctional Center*,

782 F.2d 17, 23 (2nd Cir. 1986) ("[t]he use of [the] permissive verb 'may'. . . instead of 'shall'. . .

suggests a discretionary rather than mandatory . . . process."). Because § 11 employs the word

"may," this Court agrees with Judge Grandy's analysis and concludes that its provisions are

permissive and failure to include all of the referenced terms does not invalidate the mortgage for

purposes of constructive notice.

The Trustee points out that there are cases which suggest, at least in dicta, that the

provisions of § 11 are mandatory. S*ee e.g.*, *Caraway v. Sly*, 222 Ill. 203, 205. 78 N.E.

588, 589 (1906) ("section 11. . . requires that a mortgage in that form shall recite the

nature and amount of the indebtedness, showing when due and the rate of interest, and

whether secured by note or otherwise."). However, as Judge Grandy stated in *Klasi*

*Properties*:

> [I]t does not appear to this Court that § 11 was intended to prescribe a "checklist"
> of formalistic mortgage requirements.  Rather, its purpose was to create a
> *framework* for providing sufficient notice to innocent third parties of interests in
> property.  As the court explained in *Shara Manning Properties, Inc.*, 475 B.R. at
> 910:

> Section 11 of the Conveyances Act is best interpreted as creating a safe harbor for mortgagees. A mortgage that *strictly* complies with section 11's outline for form and content is *'deemed' to be sufficient* and valid as against the mortgagor and, once recorded, as to third parties for constructive notice purposes. A mortgagee who deviates from section 11 *risks* losing that 'deemed' or automatic protection from challenges to the efficacy of its mortgage. But the *risk* that a defective mortgage will be judicially determined not to provide constructive notice to third parties is greater. . . than the risk that a mortgage will be determined to be so deficient as to be void *ab initio*.
>
> &ast; &ast; &ast;
>
> Illinois law is clear that while an error or omission in a recorded mortgage concerning the secured debt amount, maturity date, or interest rate, *may* deprive the mortgagee of the benefit of constructive notice, it does not necessarily invalidate the mortgage.

*Klasi Properties*, 2013 WL 211111 at *7.  Clearly, a mortgage that contains all of the enumerated elements of § 11 provides constructive notice to a third party purchaser. However, this Court cannot say that a mortgage that fails to do so is *per se* deficient for purposes of constructive notice.

As Judge Grandy noted in *Klasi Properties*, prior to the Bankruptcy Court's ruling in *In re Crane*, none of the reported cases interpreting §11 involved situations where the mortgages lacked only an interest rate and/or a maturity date. *Id*. at *6.  Rather, the subject mortgages also failed to state the amount of the indebtedness secured.  This is not our situation, as the mortgage did state the amount of the underlying debt.

Finally, even if the Court were to interpret the terms of § 11 as mandatory rather than permissive, the Defendant's mortgage in this case incorporated the interest rate and maturity date by reference to the underlying promissory note. *See Klasi Properties*, 2013 WL 211111 at *5. It is axiomatic under Illinois law that "when a note and mortgage given to secure it mutually refer to each other, they must be construed together."  *Metro Life Ins. Co. v. Kobbeman*, 260 Ill. App. 508, 512, 1931 WL 2961 (2nd Dist. 1931).  *See also Bailey*, 999 F.2d at 241 ("Illinois adheres to

the general rule that in construing a mortgage, courts should look at all instruments executed by the parties in the course of the transaction."). As the court explained in *Provident Federal Savings and Loan Ass'n v. Realty Centre, Ltd.*, 101 Ill. App. 3d 277, 428 N.E.2d 170, 56 Ill. Dec. 851 (3ʳᵈ Dist. 1981), *aff'd* 97 Ill.2d 187, 454 N.E.2d 249, 73 Ill. Dec. 389 (1983), the test for incorporation by reference is "whether the language of one instrument [is] such as to bring its terms clearly within the provisions of the other instrument." *Id.* at 281, 428 N.E.2d at 173, 56 Ill. Dec. at 854.  Where the language of the mortgage specifically incorporates the terms of the note, subsequent purchasers are put on inquiry as to its contents and are charged with constructive notice. *Id.*[12]  Here, not only does the mortgage reference the underlying note, but it also includes a clause incorporating the terms of that note by reference.

Based on the foregoing, this Court concludes that the Defendant's mortgage was sufficient to put third parties on notice and, therefore, was in compliance with § 11 of the Conveyances Act. Hence, the Trustee's action pursuant to 11 U.S.C. § 544(a)(3) must fail and the Defendant's Motion to Dismiss is granted.  A separate Order shall issue.

ENTERED: March 29, 2013

/s/ William V. Altenberger

UNITED STATES BANKRUPTCY JUDGE

---

[12]The idea of incorporation by reference was also addressed, at least in dicta, by the Illinois Supreme Court in *Bullock*. Although the Court in that case invalidated the subject mortgage as to a *bona fide* purchaser without actual knowledge because it failed to set forth the amount of the indebtedness, it distinguished the case from situations where the indebtedness was described by reference to other documents.  As the Court stated:

It may also be well to observe that the present case is nowise analogous to cases wherein the debt is described by reference to another instrument.  In those cases there is only the labor of going to the other instrument, where full and reliable information can be attained.  It is fixed, and beyond evasion or perversion.  But that is not the case where the reference is to an individual whose interest may be to misrepresent the truth, or who may not, with reasonable efforts, be found.

*Bullock*, 1883 WL 10352 at *6.